UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| TIMOTHY W. CLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:17-cv-00008 |
| v. ) | Judge Campbell |
| ) | Magistrate Judge Brown |
| ) | |
| CORIZON HEALTH CARE, et al., ) | |
| ) | |
| Defendants. ) | |

To: The Honorable Chip Campbell, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' motion for summary judgment (Docket Entry No. 56). For the following reasons, the Magistrate Judge **RECOMMENDS** that (1) this motion be **GRANTED;** (2) that Plaintiff's claims against all Defendants be **DISMISSED WITH PREJUDICE**; (3) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (4) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I. BACKGROUND

Plaintiff, Timothy W. Cloyd, a state inmate, formerly incarcerated at South Central Correctional Facility ("SCCF") in Clifton, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 against Defendants: Jammie Garner, Debra Kelley, Sherry ("Rees") Rich,[1] Rachel Westray, and Eric Bryant in their individual and official capacities.[2] Plaintiff asserts an Eighth Amendment

---

[1] Plaintiff incorrectly names Defendant Sherry Rich's surname as "Rees."

[2] Plaintiff's claims against Corizon Health, Inc. and Corizon, Inc. were dismissed with prejudice. (Docket Entry No. 46).

claim that Defendants denied or provided him inadequate medical care when he was incarcerated at SCCF.

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 56), contending that Plaintiff failed to exhaust his administrative remedies as to Defendants Garner, Kelley, Rich and Bryant; that Plaintiff does not allege any facts that either Garner or Kelley was directly involved in the alleged constitutional violations; that the record shows that Defendants did not act with deliberate indifference towards Plaintiff's medical needs; and that Plaintiff's official capacity claims fail as Plaintiff cannot show that Plaintiff's alleged constitutional deprivation was the result of a policy or custom. *Id.* at 8, 16, 19-22. Plaintiff filed a response in opposition. (Docket Entry No. 65).

## II. SUMMARY OF PERTINENT FACTS

### A. ALLEGATIONS IN THE VERIFIED AMENDED COMPLAINT

At all times relevant to Plaintiff's claims when he was an inmate at SCCF, Defendant Garner was the Health Services Administrator at SCCF, Defendant Kelley was a nurse practitioner at SCCF, Defendant Rich was a licensed practical nurse ("LPN") at SCCF, Defendant Westray was an LPN at SCCF, and Defendant Bryant was Assistant Warden at SCCF. (Docket Entry No. 66, Plaintiff's Response to Defendants' Statement of Undisputed Facts, ¶¶ 1-6).

In his verified amended complaint, Plaintiff alleges that he suffered back pain and "was seen by Nurse practitioner Franks" after his arrival to SCCF on February 5, 2016, where he received "Neurotin for his pain" and was placed on chronic care. (Docket Entry No. 9-1, at 2). Plaintiff alleges that on May 31, 2016, he "saw a Dr. Cople" for his chronic care visit, where a previous MRI was reviewed, treatment options were discussed, Plaintiff was prescribed an increased dosage of

2

"Neurotin," and Plaintiff received a prescription for "Elavil." *Id.* On August 17, 2016, Plaintiff presented to "Nurse Practitioner Franks," who informed Plaintiff that he "was being taken off of both the Elavil and the Neurotin." *Id.* According to Plaintiff, on September 18, 2016, Plaintiff "put in to see the doctor" and was informed by an unidentified individual that he "was being taken off of Chronic Care," "[e]ven though the Plaintiff had seen the doctor just one time, and none of his orders or recommendations, like physical therapy, had been carried out." *Id.*

Plaintiff further alleges that on December 22, 2016, he "put in a sick call request" and that he was seen by Defendant Westray. *Id.* Plaintiff's request for an MRI of his back was denied, but he did receive an x-ray. *Id.* Plaintiff asked about his chronic care and why it was discontinued after one visit. *Id.* Plaintiff also alleges that he "asked about problems in his groin area and asked to have his prostrate checked," but was told "no." *Id.* Plaintiff further alleges that he asked about having a possible bladder infection, but was told he was asking too many questions. *Id.* Additionally, Plaintiff signed up for medical and was seen on January 13, 2017, by Defendant Rich. *Id.* Plaintiff asked Defendant Rich for an MRI and for a prostate examination, and Rich advised that she would "talk to both LPN Kelley, and LPN Garner." *Id.* at 2-3. Lastly, Plaintiff alleges that on February 22, 2017, Defendant Bryant called Plaintiff into medical and allegedly "advised the Plaintiff that he would not be getting any treatment for his back" and that "he didn't care" about the amount of Plaintiff's pain. *Id.* at 3.

### B. GRIEVANCE POLICY AND GRIEVANCES

SCCF follows the Tennessee Department of Corrections ("TDOC") policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other

3

inmates, or any condition or incident within SCCF that personally affects the inmate. (Docket Entry No. 66, at ¶ 65). Upon arrival at SCCF, each inmate is given an inmate handbook that contains the grievance procedure. *Id*. at ¶ 66. The policy requires inmates to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." *Id*. at ¶ 67. Under TDOC Policy, inmates are required to provide specific details such as "dates, times, and the names of the persons involved," in the occurrence giving rise to the grievance, and if an inmate fails to name a staff member or employee in said grievance, the inmate has not exhausted the grievance procedure with respect to the actions of that staff member or employee. *Id*. at ¶¶ 68-69.

Grievances may be returned as inappropriate if an inmate attempts to grieve inappropriate matters such as institutional placement, classification, or Security Threat Group program placement. *Id*. at ¶ 70. An inappropriate grievance will be returned to an inmate, who can then appeal its designation as inappropriate or refile an appropriate grievance that complies with TDOC policy. Id. at ¶ 71. Pursuant to the TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. *Id*. at ¶ 72. SCCF maintains records of all inmate grievances properly filed and those inmate grievances are recorded in the Tennessee Offender Management Information System ("TOMIS"), a computerized database for TDOC. Id. at ¶ 73. However, when an inmate submits a grievance that does not follow grievance policies and procedures, that grievance is returned to the inmate with an explanation as to its deficiencies. *Id*. at ¶ 74.

The record reflects that Plaintiff filed six grievances while at SCCF during the time period of February 5, 2016 through March 3, 2017. *Id*. at ¶ 75; Docket Entry No. 56-2, at ¶ 12, attachment

4

thereto, Exhibit A, at 7-46. Plaintiff's first grievance (No. 23625/301870) was received on May 13, 2016, where Plaintiff complained that "morning sick call" was held at 4:00 a.m. on May 5, 2016, and that an unidentified "nurse" left before 4:30 a.m. Id. at ¶¶ 76-77; Docket Entry No. 56-2, at 45. The supervisor responded, "After review of medication administration record, it appears your medication was signed out to you on the morning of 5/5/16." Id. at ¶ 78; Docket Entry No. 56-2, at 46. The warden ultimately agreed with the response, and Plaintiff confirmed that he did not wish to appeal. Id. at ¶¶ 80-81; Docket Entry No. 56-2, at 44.

Plaintiff's second grievance (No. 24338/309567) was received on December 2, 2016, where Plaintiff complained about his dissatisfaction with medical care. Id. at ¶¶ 82-83. Plaintiff stated that he needed to see a doctor because "Practitioner Franks took me off two medications 8-17-16. Elavil, and [Baclofen] without my knowledge." Id. at ¶ 84; Docket Entry No. 56-2, at 39. The supervisor responded, "After chart review, it has been determined you are seen every 90 days for chronic care . . . . The previous provider did choose to treat your back pain with naprosyn and gabapentin instead of Elavil and Baclofen. Our current provider has seen you and addressed your back pain." Id. at ¶ 85; Docket Entry No. 56-2, at 40. On December 27, 2016, Plaintiff notified the Grievance Committee Chairperson that he wished to withdraw this grievance. Id. at ¶ 86; Docket Entry No. 56-2, at 37.

Plaintiff's third grievance (No. 24413/310440) was received on December 28, 2016. Id. at ¶ 87. There, Plaintiff stated that he went to sick call on December 22, 2016, and saw Defendant Westray. Id. at ¶ 88. Plaintiff complained to Westray that he was having back pain and asked why he was given Naproxen instead of aspirin and about other medical issues. Id. at ¶ 89; Docket Entry No. 56-2, at 34-35. In his grievance, Plaintiff complained that Westray did not order an MRI and/or

5

Case 1:17-cv-00008   Document 78   Filed 07/31/18   Page 5 of 14 PageID #: 901

refer him to another doctor.  Id. at ¶ 90; Docket Entry No. 56-2, at 35.  In response, the supervisor stated, "After chart review, it was determined you were seen 12/8/16 for chronic care.  You received new orders for blood pressure medication, pain medication, x-ray of your back, and labs.  You are seen on chronic care every 3 months."  Id. at ¶ 91; Docket Entry No. 56-2, at 36.  Plaintiff's subsequent appeals were denied.  (Docket Entry No. 56-2, at 31-33).

On January 25, 2017, the grievance clerk received Plaintiff's fourth grievance (No. 24495/311384), which concerned some of Plaintiff's property being stolen or lost.  (Docket Entry No. 66, at ¶¶ 92-93; Docket Entry No. 56-2, at 25-30.  Plaintiff's fifth grievance (No. 24564/312086), received on February 15, 2017, involved Plaintiff's objection to the rate of pay for his assigned job.  Id. at ¶¶ 94-95; Docket Entry No. 56-2, at 14-24.  Lastly, Plaintiff's sixth grievance (No. 24703/313591), received on March 29, 2017, related to Plaintiff's complaint that he had not received a copy of his medical records after he submitted a request to "Miss Padan."  Id. at ¶¶ 96-97; Docket Entry No. 56-2, at 11.

## C. MEDICAL TREATMENT

Defendants submit medical records showing Plaintiff's treatment history while he was incarcerated at SCCF.  (Docket Entry No. 56-4, at 9-57).  On December 8, 2016, Plaintiff presented to Defendant Kelley for a chronic care visit.  (Docket Entry No. 66, at ¶ 45).  Kelley conducted a physical evaluation of Plaintiff and assessed Plaintiff for hypertension, COPD, and back pain -"neuropathy."  (Docket Entry No. 56-4, at 10).  Kelley prescribe Plaintiff the following medications: Norvasc 5 mg, a calcium channel blocker used to treat high blood pressure; Elavil 50 mg, an antidepressant; and Baclofen, a muscle relaxer used to treat spasticity.  (Docket Entry No.

6

66, at ¶ 50; Docket Entry No. 56-4, at 27). Kelley also ordered a lumbar x-ray for Plaintiff. *Id*. at ¶ 51.

On December 15, 2016, Plaintiff underwent an x-ray of his lumbar spine--2 views. *Id*. at ¶ 52; Docket Entry No. 56-4, at 13. The findings were: "There is normal lumbar lordosis with no subluxation. There are no acute compression deformities. Transverse processes and pedicles are intact. The bony mineralization is normal. Mild narrowing of intervertebral disc spaces with spurring at multiple levels." *Id*. at ¶ 53; Docket Entry No. 56-4, at 13. The impression was: "1. Normal lordosis of the lumbar spine with no subluxation;" "2. No compression deformities;" and "3. Mild spondylosis." Id. at ¶ 54; Docket Entry No. 56-4, at 13.

Defendant Westray attests, in relevant part, as follows:

> Plaintiff has been: provided multiple x-rays; evaluated and/or treated by multiple nurse practitioners during numerous chronic care visits; ordered an extensive amount of medication for various conditions, including: back/nerve pain, prostate issues, hypertension, COPD, and mental health disorders; and evaluated and/or treated on at least twenty (20) occasions through nurse sick call from February 2016 through July 2017. Further, Plaintiff was a no show to nurse sick call on more than twenty (20) occasions from March 2016 through July 2017.

(Docket Entry No. 56-5, Westray Declaration, at ¶ 10); see Docket Entry No. 56-4, at 9-57.

### III. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp.*

7

*v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id*. (citing *Anderson*, 477 U.S. at 251). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV. ANALYSIS

### A. FAILURE TO EXHAUST

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner must exhaust all available remedies before filing an action in court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Such "remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). "The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'-rules that are defined not by the

8

PLRA, but by the prison grievance process itself. . . . . The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile....'" *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). The Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citation omitted); *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

The undisputed facts show that Plaintiff filed six grievances while at SCCF during the time period of February 5, 2016 through March 3, 2017 (the date on which he alleges that he arrived at SCCF and the date on which he filed his amended complaint). Five of those grievances were either not exhausted through the appeal process or did not involve claims relevant to this action. The only grievance exhausted was the grievance (No. 24413/310440) received on December 28, 2016, against Defendant Westray. Thus, Plaintiff's claim against Defendants Garner, Kelley, Rich and Bryant are dismissed for failure to exhaust administrative remedies.

### B. EIGHTH AMENDMENT CLAIM–WESTRAY

9

As to Plaintiff's claim against Defendant Westray, this Defendant contends that Plaintiff cannot show that he was denied medical care or that he was treated with deliberate indifference in violation of his Eighth Amendment rights. (Docket Entry No. 56-8, at 16). The Eighth Amendment guarantees a prisoner the right to medical care, and this right is violated when prison authorities are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Supreme Court has stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. . . .
>
> . . . .
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 104-06 (citations and footnotes omitted). A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107.

An Eighth Amendment claim of denial of medical care has both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that the plaintiff's medical needs were sufficiently serious. *Id.* "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir.2004)). However, actual physical injury due to indifference is not required. Unnecessary suffering is sufficient for Eighth Amendment purposes. *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991).

As to the subjective component, deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[T]he plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Officials may be shown to be deliberately indifferent to serious needs without evidence of conscious intent to inflict pain. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988). "However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). Further, "'[w]here a prisoner has received some medical attention and the

11

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5.

Defendant concedes for summary judgment purposes that Plaintiff's purported condition(s) constitutes an objectively serious medical condition. (Docket Entry No. 56-8, at 17). However, Defendant contends that Plaintiff cannot show that Defendant Westray acted with a sufficiently culpable state of mind to establish a claim under the Eighth Amendment. *Id.* at 17-18.

Here, the record shows that although Plaintiff requested an MRI, he received an x-ray, that he was seen for chronic care on December 8, 2016, that he received a new order for blood pressure medication, pain medication and labs, and that he was seen on chronic care every three months. (Docket Entry No. 66, at ¶¶ 51-52, 89-91). Thus, the record shows that Plaintiff received medical attention, but his claim against Westray simply pertains to a mere dispute over his medical treatment. "[T]he Eighth Amendment does not require prison medical providers to provide inmates with 'unqualified access to health care.' An inmate is entitled to adequate medical care, not the best care possible." *Rhinehart v. Scutt*, 894 F.3d 721, 750 (6th Cir. 2018) (citation omitted).

Accordingly, based upon the record, the Magistrate Judge concludes that Plaintiff's claim against Defendant Westray is without merit.

### C. OFFICIAL CAPACITY CLAIMS

Lastly, the Court notes that Plaintiff has sued Defendants in their official capacities, which is in essence a suit against CCA/CoreCivic, of which they are agents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, Plaintiff must show that CCA's/CoreCivic's "'policy or custom' . . . played a part in the violation of federal law." *Id.*; *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (a plaintiff must show "that a policy or custom was the moving force behind the alleged violations"). Plaintiff has not asserted any allegations that any policy or custom of CCA/CoreCivic played a part or was the moving force behind the alleged violations. Moreover, because Plaintiff has failed to establish any constitutional violation by any individual Defendant, Plaintiff cannot show a related official capacity claim. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

Accordingly, the Magistrate Judge concludes that Plaintiff's official capacity claims should be dismissed.

## V. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** (1) that Defendants' motion for summary judgment (Docket Entry No. 56) be **GRANTED;** (2) that Plaintiff's claims against all Defendants be **DISMISSED WITH PREJUDICE;**[3] (3) that acceptance and adoption of

---

[3]Although the norm in the Sixth Circuit is to dismiss actions for failure to exhaust without prejudice, the Sixth Circuit previously affirmed a decision of this court that dismissed a § 1983 action for failure to exhaust *with prejudice* where to do otherwise would be futile because the time to file a grievance had long since run. *See Howard v. State of Tennessee Department of Correction*, 1:12-00004 (M.D. Tenn., July 2, 2013)(Campbell, CJ)(dismissing cause of action with prejudice for failure to exhaust) (*aff'd* 6th Cir. No. 13-6095, mandate issued July 16, 2014 (Docs. 174-76)). Inasmuch as the alleged events that gave rise to this action occurred more than one year ago, the time for Plaintiff to exhaust his administrative remedies has long since past, and it would serve no useful purpose to dismiss this action without prejudice to give him an opportunity to exhaust his

13

this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (4) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 31st day of July, 2018.

/s/    Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge

---

administrative remedies.